UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY R. WEISS,<br><br>    Plaintiff,<br><br>v.<br><br>THE SOVEREIGN NATION OF AFGHANISTAN,<br><br>    Defendant. | Case No. 23-cv-02827-HSG<br><br>**ORDER DENYING SECOND JOINT MOTION FOR ENTRY OF STIPULATED ORDER FOR CIVIL MONETARY JUDGMENT**<br><br>Re: Dkt. No. 26 |

Before the Court is the parties' joint motion for entry of a stipulated order for civil monetary judgment. Dkt. No. 26. For the reasons articulated below, the Court denies the motion.

### I. BACKGROUND

On June 8, 2023, pro se Plaintiff Jeffrey Weiss filed a one-count complaint alleging breach of contract. Dkt. No. 1. Mr. Weiss' complaint alleged that the Sovereign Nation of Afghanistan ("Defendant" or " Nation of Afghanistan" or "Afghanistan") "unlawfully has and continues to date to occupy Plaintiff's land in Kabul Afghanistan." Compl. ¶ 5. The complaint alleges that Mr. Weiss and Defendant entered into a written agreement in which Defendant agreed to pay Mr. Weiss $100 million for the use and occupancy of his land.[1] Compl. ¶ 7. Mr. Weiss alleges that Defendant never paid the $100 million and therefore is in breach of the agreement. Compl. ¶¶ 11-15. Mr. Weiss seeks an award of $100 million.

On the same day the complaint was filed, both parties submitted a joint motion for entry of stipulated order for civil monetary judgment. Dkt. No. 6. That joint motion represented that "the parties [] resolved all issues in this matter" and agreed that the Court should enter the proffered

---

[1] Mr. Weiss attached what he represents to be the contract between himself and the Nation of Afghanistan to the Complaint as Exhibit 1.

1   stipulated order for monetary judgment. *Id*. at 2.  According to the motion, the Nation of

2   Afghanistan has agreed to pay Mr. Weiss $100 million for its breach.

3         Given the peculiarities of the case – a proposed consent judgment being filed on the same

4   day as the complaint; the extremely large sum of money a sovereign foreign nation purportedly

5   agreed to pay to a pro se plaintiff; and the representation of the Nation of Afghanistan in a $100

6   million dispute by what appears to be a local solo practitioner – the Court set two case

7   management conferences to discuss the parties' filing.  Dkt. Nos. 13, 14.  The Court directed

8   Plaintiff to serve the Afghan embassy in Ottawa, Canada with a copy of the complaint.  Dkt. No.

9   15.  On July 5, 2023, Plaintiff filed an affidavit attesting that service was made.  Dkt. No. 16.  The

10  Court held another case management conference on September 12, 2023.  Dkt. No. 19.  At that

11  hearing, the Court denied the parties' motion for entry of the proposed consent judgment and

12  advised that a trial or evidentiary hearing was required to establish that the purported signatory of

13  the agreement had the authority to commit the treasury of the Nation of Afghanistan to pay

14  Plaintiff $100 million.  *Id.*

15        Plaintiff appealed the denial of entry of judgment.  Dkt. No. 22.  The Ninth Circuit

16  dismissed the appeal for lack of jurisdiction because the order challenged was not final or

17  appealable.  Dkt. No. 27; *See* 28 U.S.C. § 1291.  While awaiting the result of the appeal, the

18  parties submitted the now-pending second motion for entry of stipulated order for civil monetary

19  judgment.

20  **II.   DISCUSSION**

21        Approval of a proposed consent decree is within the sound discretion of the court.  *United*

22  *States v. Oregon*, 913 F.2d 576, 580 (9th Cir.1990); *SEC v. Randolph*, 736 F.2d 525, 529 (9th Cir.

23  1984).  It is well-settled that the court may approve a consent decree if it determines that "it is fair,

24  reasonable and equitable and does not violate the law or public policy."  *Turtle Island Restoration*

25  *Network v. U.S. Dep't of Com.*, 672 F.3d 1160, 1165 (9th Cir. 2012).  The Court must "be satisfied

26  that the decree represents a 'reasonable factual and legal determination.'"  *Oregon*, 913 F.2d at

27  581, must independently scrutinize a proposed consent judgment's terms, and "must eschew any

28  rubber stamp approval," *United States v. Montrose Chem. Corp. of Cal.*, 50 F.3d 741, 747 (9th

United States District Court
Northern District of California

Cir. 1995); *see also Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 525 (1986) ("[A] federal court is more than a recorder of contracts from whom parties can purchase injunctions; it is an organ of government constituted to make judicial decisions.").

The Court is not satisfied at this stage that the parties' proposed judgment is "fair, reasonable and equitable." The Court must be "particularly sensitive to suits involving foreign states," and must be "cautious before issuing a ruling that will, in all likelihood, lead to . . . judgment against a foreign state." *Weinstein v. Islamic Republic of Iran*, 175 F. Supp. 2d 13, 20 (D.D.C 2001). Here, the Court cannot conclude on the record presented that the "Acting Minister of Defense" had the legal authority to bind the Nation of Afghanistan to the requested $100 million judgment. Plaintiff attached what he represents to be an email exchange with the Consular Section in Ottawa with the email address "consular@afghanembassy.ca" to the parties' current request. Dkt. No. 26-1 at 5-6. Plaintiff explained in his email to the Consular Section that "[s]ometime in 2021, the Ministry of Defense on behalf of the Defendant entered into an agreement with me to pay compensation for the taking and use of a vacant lot near Kabul airport." *Id.* Plaintiff requested "a confirmation letter to the judge that the Ministry of Defense of the Islamic Republic of Afghanistan has the authority to enter into any agreement to settle any claims related to and concerning the Ministry of Defense." *Id.* The Consular Section responded as follows:

> Due to the recent tragic developments in Afghanistan and a lack of communications with the current illegitimate regime in Afghanistan, the consular section does not have access to the relevant data and verification system in Afghanistan and, therefore, is not in a position to review and authenticate any agreements that were previously signed by the relevant authorities of the Islamic Republic of Afghanistan.
>
> The consular section, however, affirms in general that ministers and senior officials designated by law had the authority to address and settle any claims regarding their ministries and agencies through established mechanisms and in accordance with the relevant laws and regulations of the Islamic Republic of Afghanistan.

*Id.*

Under these circumstances, entering the requested consent judgment would be exactly

3

the sort of "rubber stamp" that is an inappropriate exercise of the Court's authority. The Court cannot conclude on this record that the requested judgment represents a "reasonable legal and factual determination," *Oregon*, 913 F.2d at 581. The fact that Plaintiff suggested in one of the case management conferences that the Court might not have jurisdiction, for purposes of trial or an evidentiary hearing, over the official who is represented to have signed the agreement only heightens this concern. Fundamentally, the parties are asking the Court to put its imprimatur on a $100 million judgment against a sovereign nation whose consular officials acknowledge that they are unable to authenticate the underlying agreement or speak to the circumstances under which it was entered. The Court does not discount the possibility that an adequate factual record might be made at trial or an evidentiary hearing so as to warrant entry of judgment, but it firmly believes that the current record does not do so.

### III.   CONCLUSION

Exercising its sound discretion, *see Oregon*, 913 F.3d at 589, the Court **DENIES** the parties' second joint motion for entry of stipulated order for civil monetary judgment.

**IT IS SO ORDERED.**

Dated:   11/20/2023

HAYWOOD S. GILLIAM, JR.
United States District Judge

4